CASE 20—PETITION EQUITY—FEBRUARY 23.

## Bush, &c., vs. Bush, &c.

2du269
f131  256

APPEAL FROM CLARK CIRCUIT COURT.

1. A sale of slaves owned by infants, made upon petition, in which they are plaintiffs, without the intervention of next friend or guardian, and without the execution of a bond, as required by chapter 86, of the Revised Statutes, is void.

2. Infants made defendants in one suit, but not served with process, actually or constructively, though plaintiffs, without next friend or guardian, in another suit consolidated with it, will not be bound by the judgment.

3. No person other than a parent can appoint a guardian by will, section 2, article 1, chapter 43. (1 *Rev. Stat.*, 574.) But any other testator may appoint a trustee to take charge of a bequest made to infants or others.

4. When the legal title of the land or slaves of infants is in a trustee, he is a necessary party to a suit to sell such property (*sec.* 545, *Civil Code*); but the proceedings, in all other respects, are required to be the same as if he had no interest.

HARLAN & HARLAN, for appellants, cited *Story's Eq. Pl., secs.* 72, 207, 208; 5 *Mon.*, 21; 7 *J. J. Marsh.*, 211; 4 *Bibb.*, 266; 6 *Mon.*, 140; 1 *B. Mon.*, 22; 9 *B. Mon.*, 52; *Civ. Code, sec.* 55; 18 *B. Mon.*, 560; 1 *Rev. Stat.*, 574; *Civ. Code, secs.* 30, 33; 3 *Met.*, 509, 270; 1 *Marsh.*, 594; 2 *Marsh.*, 501; 7 *Mon.*, 113; 6 *J. J. M.*, 197; 4 *B. Mon.*, 568; 17 *B. Mon.*, 704; 11 *B. Mon.*, 55; 7 *Peters*, 271.

B. F. BUCKNER on same side.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Appellants are the minor children and heirs at law of F. A. J. Bush, and grandchildren to the testator, Jonathan Bush.

The will directed that the portion which would be coming to F. A. J. Bush, if living, was to remain in W. T. Bush's hands until F. A. J. Bush's children should arrive at twenty-one years of age, and " then to pay over to said children their father's share, if living, with six per cent., and that not to be compounded."

W. T. Bush filed a petition in the name of all the heirs of testator, Jonathan Bush, for the sale of the slaves, because not susceptible of division in kind. This was filed September 27th, and sale ordered November 7th, 1857.

January 9th, 1858, Burbridge and wife, the latter being a child, and legatee of testator, J. Bush, filed their petition against said W. T. Bush, as executor of J. Bush, and against the heirs at law of J. Bush, for a settlement of the executor's account, the advancements to the different legatees and heirs, and a distribution of the estate.

These suits were consolidated April 30th, 1859, referred to a commissioner to report, &c.

According to the first report, there was $878 78 due to F. A. J. Bush's children as their distributable part; and by the second report an additional sum of $270.

Judgments were rendered confirming each report and ordering distribution accordingly. Appellants filed this petition to reverse these judgments, and aver that said W. T. Bush filed his petition without any statutory guardian or next friend of appellants, and without their consent in any manner. That Burbridge and wife made them defendants to their suit, but had no service of process, either actual or constructive, and they were not represented by either statutory guardian or guardian *ad litem*. They assign for errors an item of $297 27 allowed against them as interest on the advancement to their father, when no interest was charged against any other legatee for advancements. They complain, also, that W. T. Bush merely gave the commissioner who sold the property, he being a large purchaser, receipts as their trustee,

instead of paying over the money. In an amended petition they set out that W. T. Bush had purchased of his father, the testator, a tract of land and mill, to be paid for in three annual payments of $1,433 33 each, and due January 1st, 1854, 1855, and 1856; the deed for which was to be made when the purchase price was fully paid. That he had charged in his executor's account two of said installments, but that he had never paid any money, and that one install-ment had never been accounted for in any manner, and charge that a lien still existed on the land and mill for the entire amount; that the legal title was still in the heirs of testator, and they should not be compelled to surrender it until paid. That said W. T. Bush had removed from the State, and was wholly insolvent before his removal, and still so continued. That, before his removal, he had mortgaged the land and mill to James Rutlege, for the purpose of cheat-ing them, &c.

W. T. Bush made his answer a cross-petition, avers he had paid all the purchase money for the land and mill, but does not specify how; asks that a deed be decreed him, &c.; make all the legatees and heirs party defendants, but takes no further steps.

The court adjudge appellants a personal claim on W. T. Bush for $878 73, with interest from May 6th, 1859, and dis-missed their petition as to all other matters. James Rut-lege, in his answer, sets out his mortgage, which he says is for $2,500—that is, for $2,100 loaned at 20 per cent. interest; claims that his mortgage is *bona fide*, &c.

By section 2, article 1, chapter 43 (1 *Stant. Revised Statutes,* *p.* 574), "*any father* may, by will, appoint a guardian to his infant child during its minority, or for a less period," &c.

But a guardian can only be appointed by a parent or by the proper court. Any other testator may appoint a trustee; but not being entitled to the custody of the person or prop-erty of the infant, he cannot appoint a guardian for it; but as the estate bequeathed by him is fully within his own control, he may bequeath it under such restrictions and conditions as

he may deem proper, but can take no control of the minor nor its other property.

By section 539, Civil Code, it is directed "that the provisions of the Revised Statutes, in chapter 86, shall regulate the proceedings for the sale of the real property and slaves of infants."

By section 2, article 2, chapter 86 (2 *Stant. Rev. Stat.*, 304), it is directed, that "all persons interested must be made parties to the proceedings under this article," which provides how slaves held in joint tenancy or tenancy in common or otherwise, may be sold, and the proceedings thereon.

By section 2, article 6, of this chapter (2 *Stant. Rev. Stat.*, 310), the proceeds of infants' lands and slaves are directed to be paid over to his guardian. And by section 3, article, 3, p. 305, it is provided, the guardian must enter into a covenant, with good surety, stipulating a faithful discharge of his duties, &c.

The trustee in this case could not sell the interest of these infants without an appeal to the court.

The chancellor should have seen that such appeal should be in all particulars according to law; and, before ordering a sale, the court should have required a guardian, and that the beneficiaries were parties, and, before distributing the fund, required such guardian to have executed the covenant. Had all the protecting provisions of this statute been complied with, these infants' estate would not now be lost by the insolvency of a simple trustee.

The terms of the will gave the trustee, perhaps, the right to use all the estate, both money, slaves, and land, and to pay only six per cent. interest; but it did not give him the right to sell either slaves or land, and convert these into money.

By section 545, Civil Code, where the legal title of land or slaves of infants is in a trustee, he is also required to be made a party; but in all other respects the proceedings are to be the same as if the legal title was in the minor.

It is most evident, that, in all cases where it is necessary for the chancellor to authorize the sale, it is his duty to see

that the owners or beneficiaries are parties, and that the infants be secured.

Had these infants been parties, they would have until one year after arrival at age to open and show the errors of the judgment.

It has been a long settled rule of this court, that, in a suit for distribution, the distributees are necessary parties. These infant appellants were necessary parties to the petition of Burbridge and wife, and should have been either constructively or actually served with process before their rights were adjudicated. Not having been so served, and no guardian, either parental, statutory, or *ad litem*, appearing for them, they are not bound thereby.

It was, therefore, erroneous to dismiss their petition for a review; but, on the contrary, the judgments of sale, and the one adjudicating the rights of the legatees as to distribution, should be opened so far as these infants are concerned, and their rights should now be considered and adjudicated.

The question whether W. T. Bush had really paid, or, as executor, settled for the entire price of the land and mill, should also be determined, on the application of these minor appellants; and if he owes them by reason thereof, it should be adjudged them as a prior lien; as he was the executor, the installments, so far as reported and settled in his executor's account, should be recognized and affirmed. If he should owe these minors nothing by reason of the purchase price, then they should be permitted to require a foreclosure of the mortgage of Rutlege, if it be, in fact, *bona fide*, and, after paying him the principal with legal interest, purging it of usury, the remainder should be subjected to whatever claim these minors may be ascertained to have on W. T. Bush. There was a seeming error in the amount adjudicated against W. T. Bush in leaving out the $270 reported due these minors by the last report; but as the whole claim will now have to be re-examined, and the judgment reformed, this will not be material.

As the interest of these minors did not pass by either judgment, those who purchased the slaves or those who have

had their service, will be essential parties, and must account for reasonable hire; but as the slaves are now freed by consti- tutional provision, nothing can be adjudicated to them for the slaves.

On the return of the cause the court will, by a commissioner or otherwise, ascertain the claims of these minors, as they are not concluded by said judgments, and will take such steps in accordance with this opinion as may be necessary to adjudi- cate the same.

There is no direction in the will to charge these minors interest on the advancement made their father. The item for interest charged in the book kept by the testator of J. Bush seems, from the evidence, to be in some one else's hand-writ- ing, not in his. He did not charge any other of his children with interest on advancements made them, and there is no reason shown why he should charge F. A. J. Bush interest. The item for $297 27 charged as interest on the advancement to F. A. J. Bush should be rejected.

Wherefore, the judgment is reversed.

———————

To a petition for rehearing, presented by B. F. Buckner, for appellants, Judge Williams delivered the following response:

The testator, J. Bush, appointed his son, W. T. Bush, his executor, and authorized the court to qualify him without demanding a bond with surety; said executor did qualify, and thereby all right of action on debts due from him to his tes- tator were suspended. His duty as executor was to charge himself with such debts so as to answer for the same in his settlement, and the only settlement ever made by him was the one in the suit of Burbridge and wife against him and the leg- atees and heirs of the testator; and although these appellants are not bound by said settlement, yet this settlement shows a positive, unequivocal act of the executor to charge himself, as was his duty, with the two notes therein specified, given by him to his testator.

The distinction between an executor or administrator charg- ing himself with a debt due from him to his decedent in his

life, and converting the assets of his decedent to the payment of his individual liabilities, has long been recognized by the law and its courts.

The appointment of a debtor as executor or administrator suspends the right of action; but as this is really not the payment of the debt, the executor or administrator must be held chargeable with the amount of his individual indebtedness in his fiducial account, and so far as he charges himself with such indebtedness in his fiducial accounts, it must be held a cancelment of his individual liabilities; but if he should not charge this individual liability, or so far as he fails to do so, and then, as in this case, ceases to be executor, the right of action to such extent revives against him, and the legal title to the land and mill being in the heirs, they cannot be compelled to surrender it until it is paid for, and the payment only going to the extent of the executor's charge against himself, leaves a prior lien for such portion of his indebtedness not so canceled.

It was not meant in the opinion to say, that, if the purchasers of the slaves had become liable therefor by their own conduct before the freedom of the slaves by the amendment to the Constitution of the United States, that they should not be held responsible therefor.

It was only intended to say they should not be held responsible for the value of the slaves, because of their freedom by said amendment; but as the opinion is not clear and distinct in its language as to this, it is so far modified as to leave all question of liability, growing out of their own conduct previous to said amendment, open for adjudication.

The opinion is thus modified, and the petition for a rehearing overruled.